UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT

DENNIS DOYON,

        Plaintiff,

v.

        Case No. 06-14167
        Judge Avern Cohn

APEX MORTGAGE SERVICES, LLC,
TOM LEVERING, and
REBECCA ANTHONY,

        Defendants.
_____/

## MEMORANDUM AND ORDER GRANTING APEX MORTGAGE SERVICES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR ALTERNATIVELY MOVING TO STAY THE PROCEEDINGS

### I. Introduction

This is a contract case. Plaintiff Dennis Doyon (Plaintiff), a Michigan resident, is suing defendant Apex Mortgage Services, LLC (Apex), an Ohio-based mortgage broker licensed to operate in several states including Michigan, and Apex employees Tom Levering (Levering) and Rebecca Anthony (Anthony), on nine counts of fraud and related charges. The claims, stemming from a contract between Plaintiff and Apex in which Apex agreed to help Plaintiff find a lender to refinance his home mortgage, are as follows:

| COUNT | CLAIM |
|---|---|
| I | Fraudulent Misrepresentation I |
| II | Fraudulent Misrepresentation II |
| III | Innocent Misrepresentation |
| IV | Breach of Contract |

| V | Promissory Estoppel I |
| VI | Promissory Estoppel II |
| VII | Violation of the Truth in Lending Act |
| VIII[1] | Professional Malpractice |
| IX | Violation of Michigan Consumer Mortgage Protection Act |

Before the Court is Apex's motion to dismiss the complaint or alternatively to stay the proceeding on grounds that the parties agreed to arbitrate any disputes arising from the contract. For the reasons stated below, the case must be stayed pending arbitration.

## II. Background

In 2005, Plaintiff sought to refinance the mortgage on his home. On September 11, 2005, Plaintiff and Apex, through Levering, entered into a one-page contract entitled "Mortgage Loan Origination Disclosure Statement" (the Contract). In the Contract, Plaintiff requested that Apex:

> obtain and process financial information provided by or obtained on [Plaintiff's] behalf, and provide such information to Lenders . . . for the purpose of obtaining a mortgage loan.[2]

The body of the Contract consists of six paragraphs in small but legible type. All paragraphs are in the same font size and style with no emphases. The last three sentences of the fourth paragraph form an Arbitration Clause that states:

---

[1] Erroneously labeled IX.

[2] Plaintiff retained the right to refuse any terms and conditions defendant Apex proposed and the option to seek and secure financing on his own with no fees due to Apex, but agreed to pay a fee of up to 7.99% of a final loan brokered by Apex. Plaintiff also acknowledged his understanding that there was no guarantee that his loan application would be accepted by a lender and that Apex could not guarantee the best terms, interest rates, or closing costs.

> I/We agree that any disputes concerning this agreement shall be submitted to an arbitrator. The arbitration shall be governed by the Federal Arbitration Act. Both the Broker and I/we agree to be bound by any resolution achieved as a result of the arbitration.

Plaintiff says that he worked with Levering, to find a loan. Plaintiff says that Levering was able to obtain for him a $180,000.00 loan, with a 6.5% annual percentage rate (APR), for 360 months. Plaintiff says that on October 11, 2005, he signed a Good Faith Estimate prepared by Levering which reflected these terms.[3] Plaintiff says that the loan was scheduled to close around November 10, 2005, but that it fell through because Levering did not show up for the closing.

Plaintiff says that Apex told him that Levering "willfully failed to perform" even though Levering knew for over a week that Apex "would not be going through with the deal."[4] Apex then put Plaintiff in contact with Anthony to help him find a lender. Plaintiff says that Anthony told him he was no longer qualified for the loan Levering had obtained for him, and that in order to refinance a loan with a 6.5% APR, he would have to enter into a loan with a high interest rate, and make one payment. Plaintiff says Anthony told him that after he made a single payment his credit rate would be boosted high enough for the APR on the loan to be lowered to 6.5%. Plaintiff says that based on these representations, he closed a loan brokered by Apex with an APR of 11.444% on December 14, 2005. Plaintiff says that although he made the initial payment on the loan, his APR did not go down.

---

[3] Although Plaintiff's signature at the bottom of the form is dated 10/11/05, the date prepared at the top appears as 03/31/2004.

[4] It appears that Plaintiff is referring to the November, 2005 closing meeting.

Plaintiff also claims that Anthony misrepresented his monthly income to lenders, and also promised him that certain bills would be paid from the loan which were not paid.

### III. Legal Standard

A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) may be based on either a facial attack or a factual attack on the allegations of the complaint. Tri-Corp Mgmt. Co. v. Praznik, 33 F. App'x 742, 745 (6th Cir. 2002). If subject matter jurisdiction is facially attacked, the court must take all material allegations in the complaint as true and construe them in a light most favorable to the nonmoving party. U.S. v. A.D. Roe. Co., 186 F.3d 717, 721–22 (6th Cir. 1999). If, however, there is a challenge to the factual existence of subject matter jurisdiction, the court is "empowered to weigh the evidence and no presumptions apply as to the truthfulness of the relator's allegations." Id.

### IV. Argument

Apex argues that all counts in the complaint relate to the defendants' performance under the Contract and are therefore subject to arbitration. Apex says that the Federal Arbitration Act (F.A.A.), 9 U.S.C. § 3 (2006), requires a court to stay proceedings on a suit involving "any issue referable to arbitration under an agreement in writing for such arbitration" provided there has been no default in the proceeding with the arbitration. Apex argues that the Supreme Court has emphasized that the F.A.A. expresses "a liberal federal policy favoring arbitration agreements, which requires that any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983). Moreover, Apex

points out that the Court of Appeals for the Sixth Circuit has held that where a contract contains an arbitration clause that covers the counts in the dispute, a court should apply a presumption of arbitrability and resolve any doubts in favor of arbitration. United Steelworkers v. Mead Corp., 21 F.3d 128, 131 (6th Cir. 1994). Moreover, where broad arbitration clauses are concerned, the presumption for arbitration is even stronger. AT&T Techs., Inc. v. Commc'n Workers, 475 U.S. 643, 650 (1986); UAW v. United Screw & Bolt Corp., 941 F.2d 466, 472–73 (6th Cir. 1991) (an "arbitration clause is susceptible to an interpretation that covers . . . disputes [that] concern matters involving the interpretation or compliance with terms of the agreement").

Plaintiff responds that the Arbitration Clause is just one aspect of his suit. He maintains that some of his causes of action relate "not to the contract in itself, but also [to] dealings between [plaintiff and defendants]."

Second, Plaintiff argues that he was fraudulently induced into signing the Contract. He points out that the F.A.A. provides for revocation of a contract containing an arbitration clause "upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2 (2006), and that the Court, not an arbitrator, is to determine issues related to the making of an arbitration agreement, Prima Paint Corp. v. Flood & Conklin Mfg., 388 U.S. 395, 403–04 (1967) ("if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it"); Ferro Corp. v. Garrison Indus., 142 F.3d 926, 933 (6th Cir. 1998) (accord).

Finally, Plaintiff argues that the Arbitration Clause is invalid because the terms were not reached through mutual consent as he is an unsophisticated consumer, was

5

unaware of the Arbitration Clause, and did not know all the rights he was giving up by signing the Contract.

## V. Resolution

This dispute must go to arbitration. Plaintiff asserts in his response brief that Levering fraudulently induced him to sign the Contract. However, Plaintiff's complaint and arguments do not support this conclusory allegation. The thrust of Plaintiff's claim is not that Apex misrepresented the terms of the Contract. Instead, all of the alleged misrepresentations took place *after* Plaintiff signed the Contract and relate to services that the defendants agreed to provide to the Plaintiff under the terms of the Contract. Thus, all of his claims arise from the defendants' performance, or lack thereof, under the Contract. This suit is about the performance—not the signing—of the Contract and falls squarely under the Arbitration Clause.

Moreover, "[u]nder the Supreme Court's interpretation of the [F.A.A.], the issue of fraudulent inducement of a contract is to be decided by an arbitrator, <u>unless the making of the arbitration clause itself was fraudulently induced</u>." Fero, 142 F.3d at 933 (emphasis added). Here, Plaintiff does not allege that defendants fraudulently induced him to endorse the Arbitration Clause.

Next, there is no support for Plaintiff's argument that he did not agree to the terms provided in the Arbitration Clause. The Arbitration Clause appeared, unobscured, as three sentences of a short contract. Plaintiff does not argue that he was prevented from reading the contract. If plaintiff did not understand what he was signing, he could have asked. Plaintiff voluntarily signed the Contract, and in doing so, he endorsed the

6

Arbitration Clause.[5]

## VI. CONCLUSION

For the reasons stated above, Apex's motion for a STAY pending arbitration is GRANTED. The stay however, applies to Apex only. The case continues against defendants Levering and Anthony, who have yet to be served the complaint.

SO ORDERED.

        s/Avern Cohn
        AVERN COHN
        UNITED STATES DISTRICT JUDGE

Dated: August 2, 2007

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, August 2, 2007, by electronic and/or ordinary mail.

        s/Julie Owens
        Case Manager, (313) 234-5160

---

[5] Under Michigan law, even a contract of adhesion "is simply that: a *contract*. It must be enforced according to its plain terms unless one of the traditional contract defenses applies." Rory v. Cont'l Ins. Co., 473 Mich. 457, 477 (2005) (internal footnote omitted). Typical characteristics of an "adhesion contract" include unequal bargaining power, standardized language prepared by the stronger party, and a "take it or leave it" offering. Id. at 484–85; see also Margaret M. Smith, Note, Adhesion Contracts Don't Stick in Michigan: Why *Rory* Got It Right, 5 Ave Maria L. Rev. 237, 238 (2007) (elaborating on the characteristics). Here, plaintiff could have simply gone elsewhere.